## CHICAGO, R. I. & P. RY. CO. v. SHEETS.

No. 5288. Opinion Filed January 11, 1916.

(154 Pac. 550.)

1. **CARRIERS—Railroads—Power to Make Regulations—Passengers.** The general rule, in the absence of statutory provision to the contrary, is that a railway company may adopt reasonable regulations prescribing that certain of its passenger trains running regularly upon its road shall stop only at designated stations; and it is the duty of an intending passenger to inform himself whether the train upon which he means to take passage will, under the regulations of the company, stop at his destination.

2. **SAME—Questions for Jury.** Whether one was misinformed or misled, through the fault of the carrier's servants, as to a regular stopping place of a particular train which he purposed to board, or whether he was, by the acts and declarations of such servants, induced to believe when he entered such train that the same would, according to the regulations of the company, stop at his destination, are questions of fact to be submitted to a jury under proper instructions.

(Syllabus by Bleakmore, C.)

*Error from District Court, Canadian County;*
*John J. Carney, Judge.*

Action by W. F. Sheets against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble,* and *K. W. Shartel,* for plaintiff in error.

*John W. Clark,* for defendant in error.

Opinion by BLEAKMORE, C. On November 9, 1912, W. F. Sheets commenced this action against the Chicago, Rock Island & Pacific Railway Company, by his petition alleging in substance that about 4 o'clock in the morning of January 2, 1912, the defendant received him as a passenger on one of its trains, and for a valuable consideration undertook to safely transport him from the town of Minco to the town of Union in the State of Oklahoma; that after he had boarded said train, "it being one of defendant's scheduled passenger trains," and when said train was about two miles out of the town of Minco and about four miles from the town of Union, the conductor of said train called for his ticket, and, when he received it, informed the plaintiff that said train did not stop at Union and that plaintiff would have to pay his fare to El Reno and back to Union, a distance of some 18 miles, which he declined to do; whereupon the conductor stopped the train at a place distant from any railway station or from any farmhouse and unlawfully and forcibly ejected the plaintiff from said train; that it was cold and dark, and the ground and roadbed covered with ice; that there was no highway close, and that plaintiff was compelled to walk on defendant's roadbed to the town of Union, about four or five miles distant, and in doing so to cross the South Canadian river bridge, which, owing to the time of night, was dangerous.

"That defendant's actions toward plaintiff were loud and boisterous and tended to and did humiliate him before the other passengers, and did wound and injure his feelings, and did greatly inconvenience him by making

him walk to his destination; that by reason of the said wrongful acts of the defendant as aforesaid, this plaintiff was damaged in the sum of $500."

From the testimony it appears that on the morning in question the plaintiff and two others, Messrs. Thompson and Studebaker, reached the town of Minco, a flag station on defendant's railroad, a short time before the arrival of the north-bound train, purposing to take passage thereon, Studebaker to El Reno, and plaintiff and Thompson to Union. Studebaker purchased three tickets, two of them being to Union and return for the plaintiff and Thompson, and one for himself to El Reno. The ticket agent, evidently misunderstanding the intended destination, issued two tickets to Enid and return, but upon his attention being called thereto corrected his mistake and delivered the two tickets for Union, but made no statement as to whether the train then about to arrive would stop at that station, nor did the plaintiff inquire in regard thereto. There was no other train to Union until about 12 o'clock of that day.

There was an employee of defendant stationed at the opening of the train for the purpose of inquiring the destination of each passenger attempting to go aboard. The evidence is conflicting as to whether plaintiff informed the person at the entrance of the train where he purposed stopping. He was, however, permitted to enter, and after the train had proceeded some distance was informed by the conductor, who examined the tickets, that such train did not stop at Union, and that he and Thompson must either pay their fare to El Reno or get off the train. Plaintiff and Thompson refused to pay the fare, and the train was stopped, and they were told to get off, and did so. There was no physical force or violence used to ac-

complish their ejection. Plaintiff testified, however, that the tone of voice and manner of the conductor were harsh, short, and insulting, and he appeared angry. The testimony is also conflicting as to the distance the place where plaintiff was ejected was from Minco, his starting point; the trainmen testifying that the switch lights of that station were in sight, and the plaintiff and Thompson stating that such lights could not be seen, or that they did not see them. There was no evidence as to whether the place where they were expelled was near some dwelling house. It was dark, the weather was very cold, and the gound was covered with ice and snow. Plaintiff and Thompson, after some discussion, decided to go on to Union, although Minco was nearer. This they did, arriving there at daybreak. Union was not a stop for the train in question. There was judgment for plaintiff.

In its brief plaintiff in error states:

"The gist of this action is the wrongful ejection of plaintiff from the defendant's train, and is therefore an action in tort. There has been no claim on the part of plaintiff for damages for the loss of time or other special damages."

There are numerous assignments of error relative to the giving and refusal of instructions. The court gave the following instructions, of which complaint is made:

"No. 8. You are further instructed that if you believe the defendant railway company sold the plaintiff in this case a ticket which read that the passenger was entitled to transportation from Minco to Union City, and on the face of said ticket the passenger was authorized to ride from Minco to Union City, and if you further believe that the plaintiff in this case boarded the train of the said defendant company without objection on the part of the agents of the said defendant and rode part of the

distance without objection, that under those circumstances and conditions it was the duty of the defendant company to carry said passenger from Minco to Union City and there stop long enough to give him reasonable opportunity to alight from said train, even although said Union City was not a regular stopping place for said passenger train."·

"No. 10. You are further instructed that a person who seeks passage on a 'railroad train for the purpose of going from one place or point of said road to another, has a right to expect that the ticket seller on the company's road will sell tickets in compliance with the rules and regulations of the company. Therefore, if you believe from the evidence in this case that the ticket seller at Minco, Okla., sold and delivered to the plaintiff a ticket to Union City, Okla., the plaintiff in this case had a right to rely upon the provisions of the ticket which it is alleged provided that he should be carried from Minco and back on the company's train, and you are further instructed that if said ticket was sold immediately before the coming of a train into the said station at Minco, that the plaintiff had a right to expect under these circumstances that he could enter the said train and receive transportation on said train to the point designated in the ticket, to wit, Union City; and under such conditions he was authorized to enter said train for the purpose of receiving passage and transportation to Union City, Okla."

It is also urged that there was error in refusing to give the following instruction requested by defendant:

"3. · The court instructs you, gentlemen of the jury, that unless the train upon which plaintiff attempted to ride, and from which he was ejected, was scheduled to stop at Union City, plaintiff had no right to ride thereon, under the ticket sold him, unless he elected to pay his fare to a scheduled stop, and that defendant's employees were legally justified in ejecting him therefrom, unless he had gotten upon the train through the negligence of

the defendant's servants, or on account of misinformation given him by such servant."

The general rule, in the absence of statutory provision to the contrary, is that a railway company may adopt reasonable regulations prescribing that certain of its passenger trains running regularly upon its road shall stop only at designated stations; and it is the duty of an intending passenger to inform himself whether the train upon which he is about to take passage will, under the regulations of the company, stop at his destination, and without agreement or special contract providing therefor he has no right to insist upon the company changing the course of its business for his accommodation or to serve his convenience; but the circumstances may be such as to mislead the passenger in this regard, and if he is misinformed or misled through the fault or, negligence of the company's servants as to the regular stopping place of a particular train and thereby induced to board such train believing it will stop at his destination, and is ejected for refusal to pay his fare to a regular stopping place, he may recover. Mitchie on Carriers, sec. 2443; Fetter on Carriers of Passengers, sec. 302 *et seq.*

In *Noble v. A., T. & S. F. Ry. Co.,* 4 Okla. 534, 46 Pac. 483, it is held:

"In the absence of statutory provisions to the contrary, a railroad company has a right to adopt a regulation providing that one of its regular trains of passenger cars, or a part of them, running regularly upon its road, shall not stop at certain designated stations. And the duty is imposed upon one proposing to travel as a passenger on such road to inform himself whether the train upon which he takes passage stops at the station or place to which he is going, according to the regulations of the company. This is well settled in numerous cases."

In our opinion the giving of instructions Nos. 8 and 10, above quoted, constituted prejudicial error. Whether under the facts and circumstances of this case the plaintiff was misinformed or misled, through the fault of defendant's servants, as to the regular stopping places of the particular train he purposed boarding, or was by the acts and declarations of such servants induced to believe when he entered said train that the same would stop at his destination, were questions of fact which should have been submitted to the jury under a proper charge; and it was error to refuse to charge the jury as requested by defendant in this regard, or to give other instructions of similar import.

Plaintiff insists that although he may have refused to pay his fare to a station at which the train he boarded was scheduled to stop, yet he is entitled to recover on account of the breach of defendant's statutory duty in causing his expulsion at a point other than any usual stopping place, or near some dwelling house. The statute relied on, which was in force at the time of the occurrence in question (section 1394, Comp. Laws 1909), provides:

"If any passenger shall refuse to pay his fare, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage out of the cars in the following manner: A passenger who refuses to pay his fare, or to conform to any lawful regulation of the carrier, may be ejected from the vehicle by the carrier. But this must be done with as little violence as possible, and at any usual stopping place, or near some dwelling house."

This contention cannot avail plaintiff here, for the reason that no evidence was offered tending to show

whether the place at which he was ejected was near to, or far from, a dwelling house.

It is not deemed necessary to advert to other assignments of error, as the questions presented may not arise again.

The judgment of the trial court should be reversed, and the cause remanded.

By the Court: It is so ordered.